COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia

KAREN PRESTON

v.        Record No. 1545-18-2

FRANKLIN COUNTY PUBLIC SCHOOLS AND
  SCHOOL SYSTEMS OF VIRGINIA GROUP
  SELF-INSURANCE ASSOCIATION

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
MARCH 26, 2019

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Dana T. Charback (Commonwealth Law Group, PLLC, on brief), for appellant.

Roberta Ann Perko (Christopher M. Kite; Lucas & Kite, on brief), for appellees.

On September 4, 2018, the Virginia Workers' Compensation Commission denied Karen

Preston workers' compensation benefits, finding that she did not sustain a compensable injury by

accident to her brain.  On appeal, Preston contends that this finding is in error.  Because credible

evidence supports the Commission's finding that Preston did not incur a sudden mechanical or

structural change to her brain, as is required to prove an injury by accident, we affirm the

decision of the Commission.

I.  BACKGROUND

On appeal, this Court views the evidence in the light most favorable to Preston's

employer, the prevailing party before the Commission.  See Liberty Mut. Ins. Corp. v. Herndon,

59 Va. App. 544, 550 (2012).  So viewed, the evidence is as follows.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Preston was employed by Franklin County Public Schools as a bus driver. On November 10, 2016, Preston was involved in a motor vehicle accident when a tractor trailer collided with the school bus she was driving. On December 6, 2016, Preston filed a claim for benefits alleging, among other injuries, a "head" injury.

A deputy commissioner held a hearing regarding Preston's workers' compensation claim on May 9, 2017. At the hearing, the school and its insurer (collectively "the school") agreed to medical awards for injuries of the "low back, left hip, and left shoulder," but disputed the remaining claimed injuries on the basis of "no diagnosed injuries for those body parts" where there was "[n]o structural or mechanical change" causally related to the accident. The deputy commissioner noted, and Preston confirmed, that the symptoms Preston mentioned—nausea, headache, short-term memory loss, and vertigo—were not injuries themselves, but that Preston was claiming a head injury resulted in these symptoms.

On July 20, 2017, the deputy commissioner reopened the evidentiary record and requested clarification as to whether Preston was "alleging a 'head' injury, distinguishable from a 'brain' injury." In response, Preston acknowledged that the claims "reference a 'head' injury and not a 'brain' injury" and that "the two are in fact distinguishable." For this reason, Preston asked the deputy commissioner to "withhold a ruling on whether there was a brain injury, as to allow [her] the opportunity to file a separate claim for a brain injury in the near future." The school expressed no objection to Preston's requested relief.

The deputy commissioner acknowledged both parties' responses and stated that, until Preston submitted a claim for benefits as to a brain injury, "[n]o further action will be taken" with respect to that claim. The deputy commissioner's September 7, 2017 opinion treated

Preston's brain injury claim, and the associated MRI authorizations, as withdrawn without prejudice.[1]

On November 1, 2017, Preston filed a claim for benefits alleging a brain injury. The parties appeared before the deputy commissioner for a hearing regarding this claim on March 5, 2018. Preston testified that, on the day of the accident, she was treated at the scene by emergency medical personnel before being taken to the hospital and that she developed a headache as soon as she got home.

Preston met with her primary care physician, Dr. Kodanda Valusa, on November 14, 2016, where Preston was diagnosed with a nonintractable headache. Preston had initially been prescribed Norco, ibuprofen, and tizanidine for the headache, but Dr. Valusa prescribed Percocet instead. Dr. Valusa also referred Preston for a CT scan that was performed on November 23, 2016. The CT scan returned normal results that revealed no abnormalities.

One week later, as part of a surgical evaluation for her other accident-related injuries, Preston was prescribed gabapentin. At a follow-up appointment with Dr. Valusa on December 5, 2016, Preston reported continued headaches but with additional symptoms: short-term memory loss, balance problems and dizziness that would cause her to fall, and a sensation of pressure in her ears. Preston stated that she had no issues with such symptoms prior to the accident.

Because Preston's symptoms did not improve, Dr. Valusa referred Preston for physical therapy and to consult with a neurologist, Dr. Ahmet Burakgazi, on February 1, 2017. Dr. Burakgazi's consultation report listed resulting diagnoses of declining cognitive function, memory changes, and benign paroxysmal positional vertigo. Dr. Burakgazi referred Preston for vestibular therapy and for MRIs, one of which being specifically for her brain. After the

---

[1] The opinion also awarded Preston temporary total disability benefits beginning November 11, 2016, and lifetime medical benefits for low back, left hip, and left shoulder injuries, as well as the related physical therapy and MRI authorizations.

consultation, Preston followed up with Dr. Kelli Linick[2] on February 9, 2017. Dr. Linick's report indicated that Preston's "physical issues stem from the accident," but that Preston would begin taking lower doses of the prescribed pain medications to see if Preston's other symptoms improved. Despite this plan, Dr. Linick recommended an increased dosage of gabapentin the following month.

Preston underwent the MRI of her brain on March 6, 2017. The record indicates that the MRI showed "[s]ome limitations" and "[m]ucosal sinus disease," but otherwise the results were normal. Following the MRI, Dr. Burakgazi recommended that Preston continue the vestibular therapy.

Dr. Andrea Stutesman performed an independent medical evaluation of Preston on August 22, 2017. Dr. Stutesman's report made note of the numerous medications Preston had been prescribed since the accident, both for the neurological symptoms and for her other injuries, and also noted that a "side effect of narcotics is often headaches." She observed that Preston did not report problems with dizziness or falling until after she was prescribed gabapentin on top of her previously prescribed Percocet and Valium. According to her report, the combination of these three medications "would increase risk of falls as each will cause dizziness independently and together the risk is significantly increased." After summarizing Preston's extensive treatment since the accident, Dr. Stutesman opined that Preston's "progressing symptoms since her accident are primar[il]y a result of her medications."

Preston continued to treat with Dr. Burakgazi with respect to the neurological symptoms. In a questionnaire filled out on November 23, 2017, and in response to whether Preston's diagnosed symptoms were "considered an injury to the brain," Dr. Burakgazi stated, "It might cause mild concussion with no loss of con[s]ciousness." Dr. Burakgazi also specified that

---

[2] Dr. Linick assumed care of Preston following Dr. Valusa's departure from the practice.

"[h]ead shaking during the accident may cause cognitive function and memory changes." However, Dr. Burakgazi also indicated that Preston's neurological symptoms were medication induced. When asked if the delay in the onset of Preston's "headaches, dizziness, decline in cognitive function, and vertigo" changed his opinion of causation, he responded that it did because "[s]he had several issues, she paid attention [to] some of them at the beginning, [and] the others became more prominent later on." In a follow-up questionnaire, Dr. Burakgazi clarified "that the medications are a contributing factor to [Preston's] symptoms but not the sole cause of her symptoms as suggested in the IME performed by Dr. Stut[e]sman."

The deputy commissioner denied Preston's claim for benefits on April 6, 2018, finding that Preston failed to establish an injury by accident to her brain because she did not prove a sudden mechanical or structural change. The deputy commissioner cited both Dr. Burakgazi's equivocal responses that the accident "might cause mild concussion" and "may cause her symptoms" because head-shaking "may cause cognitive function and memory changes" and that Dr. Burakgazi also indicated that Preston's "neurological symptoms are medication induced."

Preston requested a review of the decision. On September 4, 2018, the Commission unanimously affirmed the deputy commissioner's decision. The Commission noted that, while Dr. Burakgazi appeared to agree that Preston's medications were one, but not the sole, cause of Preston's symptoms, and while he related Preston's symptoms to the accident, he did not sufficiently establish that Preston suffered a mechanical or structural change to her brain or that such brain injury caused her symptoms. This appeal followed.

II. ANALYSIS

On appeal, Preston contends that the Commission erred by affirming the deputy commissioner's finding that Preston did not sustain an injury by accident to her brain. Preston argues that the record contains sufficient evidence that could support a finding of a sudden

- 5 -

mechanical or structural change to her brain, and therefore benefits should be awarded. The school argues, however, that while Preston may have exhibited symptoms consistent with a brain injury, there was sufficient credible evidence in the record to support the finding that Preston did not incur a sudden mechanical or structural change to her brain. We agree with the school.

"Whether an employee has suffered an 'injury by accident' is a mixed question of law and fact." Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 167 (2001). "In determining whether credible evidence exists to support the [C]ommission's findings of fact, '[we do] not retry the facts, reweigh . . . the evidence, or make [our] own determination of the credibility of the witnesses.'" Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 340 (2007) (quoting Tex Tech Indus. v. Ellis, 44 Va. App. 497, 504 (2004)). "'The Commission's factual findings bind [this Court] as long as credible evidence supports them,'" Riverside Reg'l Jail Auth. v. Dugger, 68 Va. App. 32, 37 (2017) (quoting Van Buren v. Augusta Cty., 66 Va. App. 441, 446 (2016)), such that "the existence of 'contrary evidence . . . in the record is of no consequence,'" City of Waynesboro v. Griffin, 51 Va. App. 308, 312 (2008) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229 (1991)). "However, whether those facts prove the claimant suffered an 'injury by accident' is a question of law" which the Court reviews *de novo*. Goodyear Tire, 35 Va. App. at 168.

This Court has stated that, to prove an injury by accident, a claimant must prove "'(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change.'" Hoffman v. Carter, 50 Va. App. 199, 212 (2007) (quoting Chesterfield Cty. v. Dunn, 9 Va. App. 475, 476 (1990)).

In the present case, it is undisputed that Preston suffered an identifiable accident that occurred at a definite time. However, the record contains credible evidence that supports the

Commission's finding that Preston failed to establish a sudden mechanical or structural change to her brain. Such evidence can be found in Preston's medical test results, Dr. Burakgazi's treatment records and associated questionnaire responses, and Dr. Stutesman's independent medical evaluation.

In the months following the accident, due to symptoms presenting as neurological issues, Preston underwent both a CT scan and an MRI of her brain. The CT scan, performed just under two weeks after the accident, returned normal results. The MRI, performed approximately four months after the accident, revealed some limitations and mucosal sinus disease, but was otherwise normal. Thus, neither the CT scan nor the MRI showed signs of a sudden mechanical or structural change to Preston's brain such that her symptoms could be attributable to a brain injury. This is supported by the fact that Preston was never diagnosed with a brain injury, not even by her treating neurologist.

After his consultation, Dr. Burakgazi diagnosed Preston with symptoms of declining cognitive function, memory changes, and benign paroxysmal positional vertigo, but he did not attribute these symptoms to, nor did he expressly diagnose, a brain injury. In the questionnaire, when asked whether a brain injury was possible without experiencing direct trauma to the head, Dr. Burakgazi stated that "[h]ead shaking . . . may cause cognitive function and memory changes." Elsewhere in the questionnaire, Dr. Burakgazi related Preston's symptoms to the accident, but he responded that the accident "may cause her symptoms," or that the accident "might cause mild concussion." By qualifying his responses with terms like "may" and "might," Dr. Burakgazi effectively spoke in terms of possibility rather than assigning a reasonable degree of medical certainty.

Preston argues that Dr. Burakgazi's equivocal statements are not fatal to her claim for benefits because this Court has said that it "will not substitute form over substance by requiring a

physician to use the magic words 'to a reasonable degree of medical certainty' . . . ." Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12 (1988).[3] However, it is not necessary for us to say whether such equivocal statements about Preston's symptoms are necessarily fatal to her claim because the fact remains that Dr. Burakgazi did not actually diagnose a brain injury. Even if Dr. Burakgazi's statements could be read in such a way, it would not change our review because the record contains other credible evidence supporting the finding that Preston failed to establish that her symptoms were the result of a brain injury.

In addition to the normal CT and MRI results, Dr. Stutesman's independent medical evaluation report supports this finding. She noted that, aside from Preston's initial reported headache, the onset of the remainder of Preston's neurological symptoms did not occur until after Preston was prescribed a number of medications in a short period of time following the accident. Prior to the accident, Preston had a prescription for Valium for anxiety. For the headache following the accident, Preston was initially prescribed Norco, ibuprofen, and tizanidine before being switched to Percocet. Three weeks after the accident, Preston was prescribed gabapentin to treat her other accident-related injuries. Dr. Stutesman observed that Preston's first report of dizziness was approximately five days after being prescribed gabapentin. Dr. Stutesman reported that the combination of gabapentin, Percocet, and Valium created a "significantly increased" risk of falls because "each will cause dizziness independently." From her evaluation of Preston and review of the treatment history, Dr. Stutesman opined that "Preston's progressing symptoms since her accident are primar[il]y a result of her medications."

---

[3] At oral argument, Preston argued that this statement implies that individual terms should not be read to detract from the overall context in which they are presented. Applying this to her case, she posited that removing the equivocal terms from Dr. Burakgazi's statements shows that he contemplated a concussion as a possible source of Preston's symptoms. It is not this Court's role to alter the evidence as it exists in the record, and the reading suggested by Preston simply is not before us.

Thus, the Commission was presented with medical evidence explaining an alternative cause of Preston's symptoms.

While acknowledging that both doctors identified Preston's medications as a contributing factor to her symptoms, Preston points out that Dr. Burakgazi stated they were not the *sole* cause of her symptoms. However, Dr. Burakgazi also did not suggest any additional causes, let alone diagnose a causal brain injury.[4] Nevertheless, Preston argues that Dr. Burakgazi and his treatment records should be viewed as stronger and more credible than Dr. Stutesman because he was Preston's treating physician and had a better basis for understanding Preston's symptoms.

> The general rule is that when an attending physician is positive in his diagnosis . . . , great weight will be given by the courts to his opinion. However, when it appears . . . that the diagnosis is shaded by doubt, and there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439 (1986) (citing McPeek v. P.W. & W. Coal Co., 210 Va. 185, 188 (1969); Baltimore v. Benedict Coal Corp., 182 Va. 446, 453 (1944); Bristol Builders' Supply Co. v. McReynolds, 157 Va. 468, 471 (1932)).

It is clear that the equivocal nature of Dr. Burakgazi's statements were problematic for the Commission. In contrast, although not Preston's treating physician, Dr. Stutesman reviewed and summarized all of Preston's post-accident medical treatment, including treatment with physicians other than Dr. Burakgazi, prior to opining that Preston's symptoms were related to her medications. Nothing in the record suggests that the evidence derived from the independent

---

[4] Preston calls attention to Dr. Burakgazi's mention of a head injury in his February 9, 2018 treatment report. However, this reference to a head injury is presented as prior medical history, not as a contemporaneous diagnosis. The record provides no other context as to when or why Preston was diagnosed with a head injury. Regardless, Preston has previously acknowledged the distinction between a head injury and a brain injury, a distinction that was the basis for her request to file a separate claim.

medical evaluation was not credible. In its role as trier of fact, and in light of both Dr. Burakgazi's equivocal statements and Dr. Stutesman's medical opinion evidence, the Commission was permitted to resolve any conflicts in a manner that would be supported by the record. In this case, the record consistently failed to provide conclusive evidence that showed a mechanical or structural change to Preston's brain.

Upon review of the record, the normal CT and MRI results, the lack of a clear diagnosis from the treating physician, and the medical evaluation providing an alternative explanation all amount to credible evidence that Preston did not establish a mechanical or structural change to her brain. Because Preston failed to establish this change, she failed to carry her burden of proving an injury by accident.[5] Therefore, the Commission did not err by denying her claim for workers' compensation benefits.

### III. CONCLUSION

As credible evidence supports the finding that Preston did not suffer a compensable injury by accident to her brain, we affirm the Commission's decision.

Affirmed.

---

[5] Because Preston failed to establish the required sudden mechanical or structural change, we need not examine the actual causal connection as required by Hoffman. See Hoffman, 50 Va. App. at 212.